**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ayannia S. Miller,<br><br>Defendant. | No. 17-07357WI-001<br><br>**ORDER** |

Pending before the Court are Defendant Ayannia S. Miller's Motion to Dismiss Based on Lack of Probable Cause (Doc. 17) and Motion to Suppress (Doc. 16). The Government filed a Response to both motions on March 12, 2018 (Doc. 18). The defense did not file a reply. The matter was heard by the Court on April 4, 2018. Defendant was present and represented by counsel. The Government presented one witness, Sergeant Matthew J. Conte of the Fort Huachuca Police Department (Doc. 26 (Plaintiff's Witness List)). Defendant presented one expert witness, David Rencken (Doc. 27 (Defendant's Witness List)). The parties stipulated to the admission of the Government's Exhibit 1 and Defendant's Exhibits 21 through 27 (Docs. 28 and 29 (Exhibit Lists)). The Government also filed a Motion for Judicial Notice (Doc. 24) to which Defendant did not object. Having considered the matter, the Court denies Defendant's Motions and grants the Government's Motion for Judicial Notice.[1]

---

[1] Trial is scheduled for May 7, 2018, and the plea deadline is April 27, 2018 (Doc. 21).

## I. Findings of Fact

### A. Sergeant Conte's testimony

On August 20, 2017, Sergeant Matthew Conte of the Fort Huachuca Police Department was patrolling the housing area on the Fort Huachuca military reservation. He was equipped with a body camera and a dash mounted camera, both of which were in operation. Def. Exs. 21 (body camera), 22 (dash camera). At about 1:30 a.m., Sergeant Conte observed a silver colored vehicle make a prohibited left turn. Conte followed the vehicle for three or four blocks and then initiated a traffic stop. The vehicle did not immediately pull to the curb, but instead stopped in the roadway. Sergeant Conte centered his vehicle to the driver's tail light and approached the vehicle. As he did so, the driver, later identified as Defendant Miller, opened the door and told Conte that her windows had recently been tinted so she could not roll the window down. Sergeant Conte requested identification from the three occupants of the vehicle and also asked for the vehicle's registration and insurance documents. From the vertical orientation of the occupants' driver's licenses, Conte concluded that all three were under 21 years-of-age. Because the registered owner of the vehicle was in the back seat and there was some trouble in getting the registration, Sergeant Conte requested that Miller move the vehicle from the center of the roadway.

As directed, Miller moved the vehicle to a nearby parking lot, where Sergeant Conte reinitiated contact. Based on a strong odor of alcohol, Conte believed that at least one of the vehicle's three occupants was drinking. Due to that concern and because the two male occupants of the vehicle were trying to control the conversation, Sergeant Conte separated Miller from the vehicle and its occupants. After they had moved about 20 feet from the vehicle, Sergeant Conte asked Miller where she was coming from and going to and she initially indicated that she was from Philadelphia, she said she was coming from somebody's house. When asked if she had consumed any alcohol, she was initially not forthcoming but eventually admitted to drinking, stating that she had two drinks and "wasn't behind the wheel that long."

1  Although Miller exhibited no outward signs of intoxication and was not slurring her speech, Sergeant Conte asked Miller to perform field sobriety tests ("FST") based on his observation of the vehicle and behind-the-wheel screening of Miller.[2] For the first FST, a nine step walk and turn, Sergeant Conte told Miller to take nine steps and turn by "dancing" and walk nine steps back to the starting point. Miller started the test before Sergeant Conte had completed the instructions and she stepped off the line. For the second FST, a one leg stand, Sergeant Conte told Miller to raise one leg "as high as you can" while counting to 30. Conte did not tell Miller not to use her arms for balance and she did use them. Sergeant Conte also used a portable breath analyzer which indicated that Miller's blood alcohol percentage was .08.

Miller was arrested and, at 2:42 a.m., Sergeant Conte administered an Intoxilyzer blood alcohol content test. Prior to the test, Conte gave Miller an administrative per se form that included several admonitions, including notice of the suspension of driving privileges, that are supposed to be read before the test is administered. Although he indicated by checking a box on the form that he had read the admonitions, Sergeant Conte did not in fact do so. He did discuss consent, but told her that if she refused to perform the test he would take blood. The Intoxilyzer reported her blood alcohol level as .08.

### B. David Rencken's Testimony

Defense Expert David Rencken is a retired police officer who was employed by the Tucson Police Department for approximately 20 years and also was on the staff of the Southern Arizona Law Enforcement Training Center. He has received extensive training related to the enforcement of driving under the influence laws and was a member of the Southern Arizona DUI task force and the Governor's Office of Highway Safety. He has been involved in approximately 7000 DUI investigations and 4000 DUI arrests.

Relying on his experience, training and the DUI training resources and investigation manuals provided by the National Highway Traffic Safety Administration,

---

[2] The Government will not be using the FST evidence in its case-in-chief. Doc. 18, p. 9.

Mr. Rencken offered a number of criticisms of Sergeant Conte's performance during his stop of Miller. Mr. Rencken explained that the first level of a DUI investigation involves looking for "personal contact queues" that might indicate a driver has been drinking. He noted here that none must have been present because Sergeant Conte allowed Miller to move her car after initial contact had been made. Mr. Rencken was also critical of Conte's administration of the field sobriety tests. NHTSA recommends three tests for evaluating impaired drivers: (1) the nine step walk-and-turn; (2) the one-leg stand; and (3) the horizontal gaze nystagmus ("HGN") test. In relation to the walk-and-turn test, Mr. Rencken noted that Conte's actions were inconsistent with NHTSA's guidelines in that he did not demonstrate the test and did not instruct Miller to wait until after the instructions were complete to begin the test. Also, instead of telling Miller to take several small steps to turn around, Sergeant Conte told her to "do a dance." Mr. Rencken indicated that Conte could have used a solid line painted in the parking lot, but did not. These shortcomings, Mr. Rencken opined, affected the validity of any queues that might be found during the test.

In relation to the one-leg stand, Mr. Rencken explained that an officer should instruct the subject to stand with her feet together, arms to her side and then, without using arms to balance, lift one foot six inches off the ground. Here, Conte did not tell Miller to hold her hands to her sides and told her to hold her foot "as high as possible." These errors, according to Mr. Rencken, resulted in an invalid test.

Mr. Rencken also explained that the HGN test, which was not conducted in this case, offers the highest percentage of accuracy because the muscle response is enhanced by alcohol and a positive test will result in an involuntary jerking of the eye. Finally, Mr. Rencken was critical of both the preliminary breath test apparatus, which is not as reliable as an Intoxilyzer, and in the way it was administered. Mr. Rencken explained that Conte's instruction to "blow into it like a balloon" was wrong because the machine requires a steady breath.

## II. Conclusions of Law

On December 6, 2017, Miller was charged by Information with two Class B misdemeanors: (1) Driving Under the Influence, Impaired to the Slightest Degree in violation of A.R.S. § 28-1381(A)(1); and (2) Driving Under the Influence with a Blood Alcohol Content of .08 or more in violation of A.R.S. § 28-1381(A)(2). Doc. 1 (Information). In her motions, Miller seeks to have the charges dismissed or evidence suppressed based on a lack of reasonable suspicion to detain her for investigation and for the lack of probable cause for her arrest.

The Fourth Amendment protects a person against unreasonable searches and seizures. *United States v. Hensley*, 469 U.S. 221, 226 (1985). Consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances. *Terry v. Ohio*, 392 U.S. 1, 88 (1968). The police may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *Hensley*, 469 U.S. at 226. Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981). When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances which confronted the officer at the time of the stop. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Valdes-Vega*, 738 F.3d 1074, 1079 (9th Cir. 2013).

Here, Miller argues that the alleged traffic violation (an illegal left turn) did not provide the reasonable suspicion necessary to support Sergeant Conte's subsequent DUI investigation. In support of her argument, Miller cites a number of cases illustrating driving behaviors which are "sound indicia of drunk driving," *see People v. Wells*, 136 P.3d 810, 811 (2006) (report of driver "weaving all over the road"); *State v. Pendergast*, 83 P.3d 714, 715-16 (2004) (report of driver "cross[ing] over the center line" on a

highway and "almost caus[ing] several head-on collisions"); *State v. Golotta*, 837 A.2d 359, 361 (2003) (report of "driving all over the road" and "weaving back and forth"), and contends that an illegal left turn does not "give rise to reasonable suspicion for the crime of driving while impaired to the slightest degree." Doc. 16, p. 6. Additionally, Miller contends that the odor of alcohol was attributable to Miller's passengers and was not particularized to her.

As a threshold matter, there can be no dispute that the initial stop of Miller's vehicle was legal. "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006). Sergeant Conte observed Miller make an illegal left turn. The Court, therefore finds that the initial stop did not violate Miller's Fourth Amendment rights.

A founded reasonable suspicion stop "must be carefully tailored to its underlying justification . . . and [may] last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). However, an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," as long as he does not unreasonably prolong the stop. *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015). Here, the Court finds it reasonable that Sergeant Conte, after making initial contact with Miller, had her move her car into a nearby parking lot. The videotape of the stop establishes that Miller did indeed stop near the middle of the traffic lane. Additionally, the occupants of the vehicle were unable to immediately produce the registration documents for the car. These factors justified the continuation of the stop.

Sergeant Conte then noticed a strong odor of alcohol emanating from the vehicle. In order to discern if it was emanating from Miller, and to separate her from her passengers, Sergeant Conte had her walk about 20 feet from her vehicle. At that point, Sergeant Conte knew from the orientation of Miller's driver's license that she was under 21. He asked her if she had anything to drink that night and, after initially equivocating, she admitted that she had. As the Government notes, A.R.S. § 4-244(34) provides that it

is unlawful "[f]or a person under twenty-one years of age to drive or be in physical control of a motor vehicle which there is any spirituous liquor in the person's body." Based on this statute, Miller's age and her admission that she had been drinking, further investigation was warranted at that point.

Sergeant Conte continued the investigation by performing field sobriety tests and administering a preliminary breath test. The Court agrees with Miller and her expert that the way in which Sergeant Conte conducted the field sobriety tests rendered them unreliable. The directions he provided for the walk and turn around test were incomplete (he did not tell Miller to wait for him to finish the instructions) and inconsistent with NHTSA guidelines (telling her to "dance" to turn around). Similarly, his directions for the one-leg balance test were inaccurate (telling her to raise her foot as high as she could) and incomplete (not telling her that she could not use her arms to balance). The Government has represented that the results of the field sobriety tests will not be used in its case-in-chief. Given the errors committed made in administering the tests, the Court likewise will not give the results of the tests any weight in determining probable cause.

Nevertheless, the Court finds that probable cause to arrest existed. "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) (citation omitted). Here, based on the facts that Miller was driving, was under the age of 21 and had a breath test that returned positive results for the presence of alcohol in her system, a prudent person would have concluded that she had violated A.R.S. § 4-244(34). It is irrelevant that she was not charged under that statute, but was instead charged with driving under the influence in violation of A.R.S. §§ 28-1381(A)(1) and (A)(2). This is because, when probable cause to arrest for any crime exists, an arrest does not violate the Fourth Amendment whether or not that crime is actually charged. *See Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004). "As long as the officers had some reasonable basis to believe [Miller] had committed a crime, the arrest is justified as being [ ] based on

probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 952 (9th Cir. 2003) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994)). As such, Miller's arrest did not violate the Fourth Amendment.

### III. Order

**Accordingly,**

**IT IS ORDERED** that Defendant Ayannia S. Miller's Motion to Dismiss Based on Lack of Probable Cause (Doc. 17) and Motion to Suppress (Doc. 16) are **denied**.

**IT IS FURTHER ORDERED** that the Government's Motion for Judicial Notice (Doc. 24) is **granted**.

Dated this 12th day of April, 2018.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge